IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KELLER FARMS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CSX TRANSPORTATION, INC., and BALTIMORE & OHIO RAILROAD COMPANY,**<br><br>**Defendants.** | **Case No. 3:24-CV-02164-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This case arises out of two flooding events in Caseyville, Illinois, allegedly caused by Defendants CSX Transportation, Inc. ("CSX") and Baltimore & Ohio Railroad Company ("B&O"). Initially, the plaintiffs were the Village of Caseyville, and Keller Farms, Inc. and Keller Properties LLC, the owners of nearby farm property. On September 9, 2025, the Court dismissed the Village's claim but permitted the Keller plaintiffs' negligence claim to proceed. They thereafter sought and received leave to amend their complaint. Defendants now seek dismissal of the amended complaint. (Doc. 64). In the alternative, they ask the Court to strike certain allegations and require a more definite statement pursuant to Rule 12(e). For the following reasons, the motion is denied.

## FACTUAL BACKGROUND

On the night of July 25 and into July 26, 2022, a "massive surge of water" rushed

through Caseyville. (Am. Compl. ¶ 1). The surge was allegedly caused by "countless gallons of water that became bottled up" on Defendants' property behind their railroad bridge crossing over Little Canteen Creek. (*Id.* ¶ 2). Water allegedly built up because debris had accumulated in the area over time, eventually impeding the creek's natural flow. *Id.* When a storm hit on July 25, water levels swelled over the banks of the creek and put stress on the creek's levees. (*Id.* ¶ 3). Eventually, the south levee failed, "creating a gap . . . the size of a greyhound bus," which "unleash[ed] a huge amount of water over the adjacent farmland" and into Caseyville. (*Id.* ¶¶ 16, 17). Keller Farms owns farmland near Defendants' property, where it grows and harvests crops. (*Id.* ¶¶ 36-37). When the south levee failed, water rushed onto the Keller property "destroying all of [their] crops" south of the levee. (*Id.* ¶¶ 49, 77).

Defendants allegedly knew that debris could create a "makeshift dam" because it had happened before. (*Id.* ¶¶ 4-5). Nevertheless, Defendants failed to monitor and maintain the Bridge area or "fix, adjust, redesign, or make any improvements on the land of the [b]ridge to prevent debris collection since at least 1996." (*Id.* ¶¶ 9-10). Defendants, moreover, did not communicate with Caseyville police and first responders in advance of the storm, nor did they warn the Keller entities about the allegedly dangerous condition that existed on their property that could create a flood. (*Id.* ¶¶ 15-16).

In July 2024, a heavy rainstorm dumped several inches of rain in a short period. (*Id.* ¶ 51). Much as before, debris accumulated at the base of the bridge. (*Id.* ¶ 52). Then, the levee on the northeastern side of the bridge failed, steering water and debris onto the Keller property. (*Id.* ¶¶ 53-54). The water did not drain for several days, and Keller Farms

had to spend substantial sums to remove the debris and prepare the field for planting. *Id.* ¶¶ 55-56.

Keller Farms, joined by the Village of Caseyville and Keller Properties LLC, filed suit against the railroads in the Circuit Court of St. Clair County, Illinois, on July 24, 2024. Defendants removed the case to federal court on September 12, 2024. (Doc. 1).[1] On September 9, 2025, the Court dismissed the Village's claims but permitted the Keller plaintiffs to proceed on their negligence claim. The Keller plaintiffs then sought leave to file an amended complaint to bring a claim regarding the 2024 flood, which the Court granted. The amended complaint pleads two negligence claims—one for each of the two flood events.[2] Defendants now seek to dismiss the amended complaint. (Doc. 64).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual

---

[1] Federal subject matter jurisdiction is secure under the diversity statute, which requires opposing parties to be "citizens of different [s]tates" and an amount in controversy exceeding $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Keller Farms is an Illinois citizen because it is incorporated and has its principal place of business in Illinois. (Doc. 62, ¶ 32); *see also* 28 U.S.C. § 1332(c)(1). CSX is a citizen of Virginia and Florida because it is incorporated in Virginia and has its principal place of business in Jacksonville, Florida. (Doc. 40, p. 2). B&O merged into The Chesapeake & Ohio Railway Co. in April 1987, which then merged into CSX in September 1987. B&O thus "has no active railroad operations and no longer exists as a distinct entity subject to legal process." (*Id.*). This satisfies complete diversity because Keller Farms is an Illinois citizen and Defendants are Virginia and Florida citizens. The amount in controversy requirement also appears to be met because Keller Farms alleges a monetary loss of $405,000. (Doc. 62, ¶ 84); *see also Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) ("The plaintiff's allegations about the amount in controversy control unless the court concludes, to a legal certainty, that the face of the pleadings demonstrates that the plaintiff cannot recover the jurisdictional minimum or that the proofs show that the plaintiff never was entitled to recover that amount.") (internal quotation marks omitted).

[2] Keller Farms, Inc. is the sole plaintiff named in the amended complaint. *See Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015) (noting that filing an complaint is the appropriate way to add or drop parties or claims).

allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must 'ask itself *could* these things have happened, not *did* they happen.'" *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This means that the plaintiff must offer "some specific facts to support the legal claims asserted in the complaint." *Id.* (quoting *McAuley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation modified)).

A complaint, moreover, "need not anticipate or refute potential affirmative defenses." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Affirmative defenses are thus generally resolved in a motion for judgment on the pleadings under Rule 12(c), not in a motion to dismiss under Rule 12(b)(6). *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025). Dismissal on the basis of an affirmative defense under Rule 12(b)(6) is only appropriate "if the affirmative defense is clear from the face of the complaint." *Id.*; *see also H.A.L. NY Holdings, L.L.C. v. Guinan*, 958 F.3d 627, 631-32 (7th Cir. 2020). So, "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint

that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). And when an affirmative defense is raised in a motion to dismiss under Rule 12(b)(6), the defendant bears the burden of proof. *Benson v. Fannie Mae Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019).

## Discussion

Defendants ask the Court to dismiss the amended complaint in its entirety—or at least narrow it "substantially." They reason that the amended complaint strays beyond the legal theories the Court held were viable in its initial order and asserts new theories that Illinois would not recognize or are preempted by federal law. They also assert that Keller Farms fails to plausibly plead causation and that its punitive damages allegations should be stricken as legally insufficient. In the event the Court declines to dismiss the case, Defendants ask the Court to order Keller Farms to provide a more definite statement about what conduct it believes is actionable. Defendants also note that the Baltimore and Ohio Railroad no longer exists as an entity subject to suit and should be dismissed from the case.

Keller Farms responds that its complaint does not vary substantively from the original allegations the Court found sufficient. Accordingly, there is no need for the Court to weigh in on the viability of every possible duty that could be relevant to its negligence theory. It further argues that the complaint sufficiently articulates its theory of causation as well as punitive damages. Finally, it notes that it included B&O as a defendant because it is identified as the landowner of at least some of the relevant parcels, according to the St. Clair County Recorder of Deeds.

## I. The Amended Complaint

Defendants first assert that the amended complaint must be dismissed because it includes tort theories that are not recognized in Illinois or would be preempted by federal law. Specifically, they argue that Keller Farms now alleges they had a duty to redesign the railroad bridge, monitor the area for debris, and warn nearby property owners about the risks of a flood. However, many, if not all, of these allegations were included in the original complaint, so Defendants were on notice of these allegations previously. *Compare* Doc. 1-1, ¶¶ 45, 48 *with* Doc. 62, ¶¶ 66, 68. In its prior order, the Court held that the original complaint sufficiently alleged that Defendants had violated the duty of ordinary care and a duty on landowners not to increase the natural flow of surface water onto adjacent land. (Doc. 42, pp. 20-21). Keller Farms appears to acknowledge that these two duties are central to the claims it asserts in the amended complaint. (Doc. 67, p. 2).

It is true that the amended complaint does mention other duties, including a "duty to prevent dangerous conditions from existing on their own property," a "duty not to trespass and create dangerous conditions on their neighbor's properties," and a "duty to warn anyone in harm's way if it creates a dangerous condition on their neighbor's property." (Doc. 62, ¶ 66). It is not completely clear whether Keller Farms views each of these "duties" as doctrinally distinguishable in Illinois law or whether they were included to address the question of whether the duty of ordinary care attaches in the circumstances here. *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097, 358 Ill. Dec. 613 (Ill. 2012) (stating that the relevant factors are "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against

the injury, and (4) the consequences of placing that burden on the defendant."). In any event, it is well-settled that "a complaint need not plead legal theories." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561 (7th Cir. 2011). At this stage of the case, the Court is not inclined to conduct surgery on the amended complaint to determine which duties are viable beyond those it already recognized, particularly where the parties have not briefed the issue in any depth.

For similar reasons, the Court is not persuaded by Defendants' argument that "the amended complaint's design, elevation, and infrastructure-modification theories should be dismissed" as preempted by federal law. (Doc. 64, p. 8). For background, the Court previously held that Keller Farms' negligence claims were not preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101, *et seq.* ("ICCTA") or the Federal Railroad Safety Act, 49 U.S.C. § 20101, *et seq.* ("FRSA")—at least at the pleadings stage. (*Id.* at pp. 14-20). Defendants say that the amended complaint alleges that the railroad bridge acted as a dam, which may implicate requirements for railroad construction and design set out in 49 C.F.R. § 213.31, and thus may be preempted by FRSA. They cite § 213.33, which provides that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." The Court rejected a nearly identical argument in its prior order:

> Defendants cite several regulations related to the inspection and maintenance of railroad tracks to support their claim that federal standards "cover" the subject matter of the Kellers' negligence claim. 49 C.F.R. § 213.7(b) requires "track owner[s]" to "designate qualified persons to inspect track for defects," and specifies the qualifications that inspectors

> must demonstrate. 49 C.F.R. § 213.33 stipulates that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." 49 C.F.R. § 213.233 requires all tracks to be "inspected in accordance with [a specified] schedule" and demands "immediate[]" remedial action if a "deviation" is found. 49 C.F.R. § 213.237 requires "internal rail inspections" in addition to those specified in § 213.233 to minimize "service failure rates." And finally, 49 C.F.R. § 213.239 states that "[i]n the event of fire, flood, severe storm, or other occurrence which might have damaged track structure, a special inspection shall be made of the track involved as soon as possible after the occurrence and, if possible, before the operation of any train over that track."
>
> As the Court sees it, these regulations, at best, "touch upon" or "relate to" the Kellers' theory of liability. The complaint does not accuse Defendants of improperly constructing or maintaining their tracks or other equipment they rely on for their operations. Rather, it alleges that Defendants—as landowners—failed to take care of their property and, in doing so, exposed the Kellers to major flooding that damaged their crops. *That* matter is not "substantially subsumed" by the regulations Defendants cite. Their argument conflates regulatory standards governing *track* construction and maintenance with general property maintenance. And under this interpretation, these regulations would govern the maintenance of *all* real property that is owned by a railroad, regardless of its relationship or proximity to a track. That is a bridge too far. *See Norfolk S. Ry. Co. v. Box*, 556 F.3d 571, 572 (7th Cir. 2009).

(Doc. 42, pp. 8-19).

The amended complaint does not vary substantively from the original pleading. Defendants cite paragraphs 3, 13, 17-19, and 52-58 of the amended complaint as examples of a "more specific theory" than Keller Farms alleged previously, but most of these paragraphs merely differ slightly in wording, in large part to reflect that the Village of Caseyville is no longer a plaintiff. Paragraphs 52 through 58 are new, but these cover Keller Farms' allegations regarding the 2024 flooding incident. The Court sees no reason, at this stage of the case, to revisit its conclusion that Keller Farms has not pleaded itself

out of court by admitting all of the ingredients of a valid preemption defense. (Doc. 42, p. 16). As stated previously, Defendants may reassert an FRSA preemption argument after the close of discovery.

II. Proximate Cause

Next, in a single paragraph, Defendants argue that the amended complaint fails to adequately plead causation. They reason that Keller Farms does not explain how Defendants' conduct was the proximate cause of the alleged losses, when the factual narrative describes rainfall, upstream debris, rising creek conditions, and the failure of nearby levees as the sequence of events that caused the harm. In Illinois, proximate causation entails "two distinct requirements: cause in fact and legal cause." *Lee v. Chicago Transit Auth.*, 152 Ill. 2d 432, 605 N.E.2d 493, 502 (1992). The former "exists where there is a reasonable certainty that a defendant's acts caused the plaintiff's injury." *Krywin v. Chicago Transit Auth.*, 238 Ill. 2d 215, 226, 938 N.E.2d 440, 446 (2010). This inquiry employs either the traditional "but for" standard or the "substantial factor" standard, where "the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 851 (N.D. Ill. 2022) (quoting *Turcios v. DeBruler Co.*, 392 Ill. Dec. 541, 32 N.E.3d 1117, 1124 (2015)). The legal cause inquiry, in contrast, is "'largely a question of foreseeability' that answers if 'the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct.'" *Scott v. Wendy's Props., LLC*, 131 F.4th 815, 819 (7th Cir. 2025) (quoting *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258, 811 N.E.2d 670 (2004)). Essentially, the inquiry asks "[h]ow far should a defendant's legal responsibility extend

for conduct that did, in fact, cause the harm?" *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395, 821 N.E.2d 1099, 1127 (2004).

Defendants' causation argument does not cite any federal or Illinois caselaw or describe the relevant legal standard. The Court therefore finds this undeveloped argument is waived. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (similar).

In any event, the Court believes that Keller Farms sufficiently pleaded proximate cause. The amended complaint clearly explains how Defendants' "debris-clogged bridge area would turn the Creek into a dangerous makeshift dam," causing water to "swell[] up to the surrounding levees." (Am. Compl. ¶¶ 5, 11). Ultimately, the pressure of the water caused the levees to collapse, unleashing a wave of water into Plaintiff's farmland. (*Id.* ¶ 19). According to Keller Farms, Defendants were aware this could happen because it had happened before. (*Id.* ¶¶ 4-5). At least at the pleading stage, Keller Farms has plausibly alleged that it was reasonably foreseeable to Defendants that harm could result from their allegedly negligent acts and that the harm was, in fact, caused by their negligent acts.

<u>III. Punitive Damages</u>

Defendants next argue that the amended complaint's punitive damages allegations are legally insufficient and should be stricken under Rule 12(f). They reason that Keller Farms was required to allege a specific decisionmaker who acted improperly,

a specific warning that was ignored, or a specific imminent risk that was deliberately disregarded. Keller Farms responds that the amended complaint describes how CSX was on notice of the issues with the bridge and alleges that its engineers knew that greater steps needed to be taken to prevent flooding, yet it consciously ignored their recommendations.

Much as above, Defendants' argument spans a single paragraph and does not cite any pertinent legal authority. The Court therefore finds the argument is waived. *See Schaefer*, 839 F.3d at 607. In any event, the Court is not persuaded that the punitive damages allegations should be stricken. Motions under Rule 12(f) are generally disfavored because of their potential to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants focus on paragraph 78 of the amended complaint, which states:

> Defendants' acts or omissions set forth above were done intentionally, maliciously, or recklessly so as to raise a presumption of conscious indifference to consequences and warranting punitive damages in an amount to be set by the jury to deter such conduct in the future.

(Doc. 62, ¶ 78).

"Illinois law does not recognize a claim brought solely for punitive damages." *Manning v. YRC, Inc.*, No. 20-CV-367-RJD, 2020 WL 3544981, at *1 (S.D. Ill. June 30, 2020). Rather, punitive damages "are available only when torts are committed with fraud, actual malice, deliberate violence or oppression, wilfulness, or such gross negligence as to indicate a wanton disregard of others' rights." *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 601, 732 N.E.2d 696, 706 (2000).

The amended complaint alleges sufficient facts to make this showing. Most notably, Keller Farms alleges that CSX was well aware of the potential that its property could cause floods in the area and that its engineers acknowledged changes were needed. (Doc. 62, ¶¶ 62-63). Yet CSX did not act to address the issues. (*Id.* at ¶ 64). At least at this stage of the case, these allegations support an inference of wanton gross negligence.

IV. Defendants' request for a more definite statement

In the alternative, Defendants ask the Court to order Keller Farms to identify what conduct it believes is actionable and what specific theories it intends to pursue. The Federal Rules of Civil Procedure allow a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). But motions for a more definite statement "are generally disfavored, and courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft a responsive pleading." *Moore v. Fid. Fin. Servs., Inc.*, 869 F. Supp. 557, 559–60 (N.D. Ill. 1994). Relevant here, they are not to be "used simply to ascertain plaintiff's legal theories." *Charles v. N.G.T. Corporation*, No. 3:16-CV-00622-CRS, 2017 WL 119478, *2 (W.D. Ky. 2017). Defendants may use contention interrogatories to clarify the matters at issue. *Joseph*, 638 F.3d at 561.

V. Baltimore and Ohio Railroad Company

Finally, Defendants argue that the Baltimore and Ohio Railroad Company should be dismissed because it merged with one of CSX's predecessor companies in 1987 and no longer exists as a separate legal entity subject to suit. This argument appears entirely

sensible. Keller Farms, however, says the issue should be handled on a motion for summary judgment. It notes that St. Clair County property records still identify B&O as the owner of some of property parcels in this case. (Docs. 67-1, 67-2, 67-3).

Keller Farms is correct that the Court, with limited exceptions not relevant here, may not consider matters outside of the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Perhaps the viability of B&O as a defendant can wait for summary judgment. However, the Court hopes that the parties can come to an agreement to resolve this aspect of the dispute. It would be surprising for CSX to disclaim ownership of the railroad line. The Court therefore will direct the parties to meet and confer regarding the possibility of a stipulation to dismiss the claims against B&O.

## Conclusion

For these reasons, Defendants' motion to dismiss Plaintiff's amended complaint (Doc. 64) is **DENIED**. The parties shall meet and confer about the status of the Baltimore and Ohio Railroad Company. They shall file a report with the Court **on or before November 24, 2026**.

**IT IS SO ORDERED.**

**DATED: November 10, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**